IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| MARTHA ELLERBROOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF LUBBOCK, TEXAS, ) | |
| ) | Civil Action No. 5:09-CV-144-C |
| Defendant. ) | ECF |

**ORDER**

On this day the Court considered Defendant the City of Lubbock's (the City) Motion for Summary Judgment, filed May 14, 2010, along with Plaintiff Martha Ellerbrook's (Plaintiff) Response, filed June 4, 2010. After considering the relevant arguments and authorities, the Court is of the opinion that Defendant's motion should be DENIED.

**I.
BACKGROUND**

Plaintiff sues the City for allegedly retaliating against her for engaging in protected activity under Title VII. Plaintiff is married to Terry Ellerbrook (Terry), a former employee of the City. Terry worked under Tom Adams (Adams) as a Water Utility Director until he was terminated by Adams when, according to Adams, Terry failed to competently perform tasks required. Terry subsequently filed a discrimination lawsuit with the Equal Employment Opportunity Commission (EEOC) against Adams, an issue that became well known among other of the City's employees. Plaintiff, also a former employee of the City, assisted her husband in

his pursuit of his EEOC claims, a fact which became known among the City's employees as well.

While Terry's EEOC claim was pending, Adams advertised a Water Programming Coordinator position with the City. The position was created to assist the City in technical and administrative assignments related to the City's water utilities. Plaintiff applied for the job and was one of three candidates interviewed for the position. Adams was in charge of hiring for the position, but after reviewing the applications and learning that Terry's spouse was to be interviewed, he hired a third-party consultant, George Christopher Hartung (Hartung), to conduct the interview. To assist Hartung in the interview process, Adams created what Plaintiff refers to as the "scoring matrix," a system designed to quantitatively assess the qualifications of each candidate interviewing for the position. Hartung conducted the interviews and returned the completed scoring matrix to Adams. Ultimately, Adams selected another candidate over Plaintiff, who was the lowest-scoring candidate based on the scoring matrix system.

Plaintiff, suspecting that Adams may have used her connection and participation in Terry's EEOC claim against Plaintiff, filed her own EEOC claim against Adams, arguing that the City, through Adams, retaliated against Plaintiff by denying her the position. After receiving her right-to-sue letter from the EEOC, Plaintiff filed this claim in this Court on June 26, 2009, against the City, arguing that the City retaliated against her in violation of Title VII of the Civil Rights Act. The City now moves for summary judgment, arguing that Plaintiff cannot establish her retaliation claim as a matter of law.

## II.
## STANDARD

**A.     Motion for Summary Judgment**

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotations omitted).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248.  In making its determination, the court must draw all justifiable inferences in favor of the non-moving party. *Id.* at 255.  Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," the non-movant must come forward, after adequate time for discovery, with significant probative evidence showing a triable issue of fact. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

To defeat a properly supported motion for summary judgment, the non-movant must present more than a mere scintilla of evidence. *See Anderson*, 477 U.S. at 251.  Rather, the non-movant must present sufficient evidence upon which a jury could reasonably find in the non-movant's favor. *Id.*  The pleadings are not summary judgment evidence. *See Little v.*

3

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Giles v. General Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (quoting *Celotex*, 477 U.S. at 324). Absent a showing that there is a genuine issue for trial, a properly supported motion for summary judgment should be granted. *See Eversley v. MBank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1988); *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1022-23 (5th Cir. 1995).

**B.    Retaliation Claim Under Title VII**

For a plaintiff to establish a prima facie case for retaliation under Title VII with circumstantial evidence, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000), cited in *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007). Under the modified *McDonnell Douglas* framework, after a plaintiff demonstrates her a prima facie case for discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If the defendant meets its burden of production in showing a legitimate reason for its actions, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact by showing that 1) the defendant's reasons are false or unworthy of credence and, thus, merely a pretext for discrimination, or 2) the defendant's reasons, while true, were also motivated by a protected characteristic. *See id.* at 312.

## III.
## DISCUSSION

First, the Court must determine whether Plaintiff has demonstrated a prima facie case for retaliation. As to the first element, the Court concludes that Plaintiff has shown that she engaged in protected activity. Plaintiff claims that she engaged in protected activity when she assisted her husband in his EEOC discrimination claim against Adams. For purposes of the anti-retaliation provision of Title VII, a person engages in protected activity when she participates in the protected conduct of her spouse. *See Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226-27 (5th Cir. 1996) (applying this holding to an ADEA case but noting that "the anti-retaliation provisions of the ADEA and Title VII are similar"); *see also Ramirez v. Gonzales*, 225 Fed. App'x 203, 209 (5th Cir. Jan. 30, 2007) (applying *Holt* to a Title VII case); *Lowrey v. Tex. A &M Univ. Sys.*, 117 F.3d 242, 252 (5th Cir. 1997) (*"*Likewise, we have held that one employee's opposition to discriminatory employment practices directed against a fellow employee may be protected activity under the anti-retaliation provision of title VII."). It is undisputed that Plaintiff participated in and assisted her husband with the filing of his Title VII EEOC claim. (*See, e.g.*, Def.'s App. Dumbauld Depo. 49:8-22). Moreover, the law is well-settled that Terry's "[f]iling [of] an EEOC complaint is clearly a protected activity." *See Ramirez*, 225 Fed. App'x at 209 (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005)). By showing evidence that she participated in her husband's EEOC claim, Plaintiff has demonstrated that she engaged in protected activity.

Next, Plaintiff must show that she suffered an adverse employment action. This element appears to be undisputed. An adverse employment action is any action that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *See*

*McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Here, Plaintiff claims she was denied a position for which she asserts she was qualified. A refusal to hire is an adverse employment action. *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir. 1997). This element has been met.

Finally, Plaintiff must show that a causal connection exists between the protected conduct and the adverse employment decision. Plaintiff argues that a causal connection exists because there is evidence that the decision-maker, Adams, was aware of Plaintiff's protected activity and altered the hiring-decision process specifically because of it. The City disagrees and argues that the decision-maker was not Adams but the person who actually interviewed the candidates, Hartung. The Court is of the opinion that Plaintiff has shown evidence upon which a trier of fact could find that Adams was the decision-maker. *See Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003). First, under Adams' own assertion, he did not hire the outside consultant to select or recommend a final candidate to hire, as suggested by the City, but to fill in the candidate's rankings under a matrix scoring system developed by Adams to quantitatively assess the candidates. (Pl.'s App. Ex. 1 53:21-54:2, 59:15-23.) Although Adams asserts that he made his hiring decision based upon the scoring matrix as filled in by Hartung, this does not change the fact that the ultimate hiring decision continued to rest with Adams and not the consultant. Hence, it was Adams' prerogative to use or discard Hartung's findings. (*See* Pl.'s App. Ex. 1, 73.) Moreover, Adams' supervisor, Lee Ann Dumbauld (Dumbauld), indicated in her deposition that the hiring decision was up to Adams and that the selection would be made based on his recommendation. (Def.'s App. Dumbauld Depo. 86:2-5.) Thus, Plaintiff presents


some evidence that the ultimate hiring decision continued to rest with Adams and not the consultant.

Having found evidence supporting that Adams was the decision-maker, the Court must determine whether Plaintiff has presented some evidence connecting Adams' decision not to hire Plaintiff with Plaintiff's participation in her husband's EEOC claim against Adams.  At least for purposes of establishing a prima facie case, Plaintiff presents sufficient evidence of this connection.  Plaintiff's evidence demonstrates that Adams terminated Plaintiff's spouse, Terry, as the Water Utility Director under a belief that Terry was not competent to do the job.  (Pl.'s. App. Ex. 1 16:11-16, 26:11-27:5.)  Terry eventually filed a discrimination suit against Adams because of this termination, a fact of which Adams and many other City employees were very well aware.  (*Id.* Ex. 1, 52:6-8; *see also* Def.'s App. Dumbauld Depo. 49:8-22.)  Adams' supervisor, Dumbauld, admits to personally knowing of Plaintiff's involvement in Terry's EEOC discrimination action, and there is evidence indicating that Adams was collaborating with Dumbauld in how to approach the interview with Plaintiff in light of Terry's EEOC suit against him.  (*See* Def.'s App. Dumbald Depo. 49:8-22, 86, 144.).  This is more than enough evidence to infer that Adams knew of Plaintiff's participation with her husband's suit.  Combining this with facts demonstrating that Adams hired Hartung and developed the scoring matrix specifically because of the ongoing dispute with Terry is more than sufficient to support a finding that Adams' subsequent refusal to hire Plaintiff was causally connected to Plaintiff's engagement in the protected activity.  (*See* Pl.'s Ex. 1 55:1-5, 58:6-14.)  Plaintiff has met her prima facie case.

The Plaintiff having stated a prima facie claim for relief, the burden switches to the City to produce a legitimate, non-discriminatory reason for refusing to hire Plaintiff.  The City easily

makes this showing. Here, the City asserts that Plaintiff was the least-qualified person to hire out of the candidates considered. In order to determine the most qualified candidate, Adams developed what Plaintiff refers to as a scoring matrix. (Pl.'s App. Ex. 1, 59:15-23.) Adams asserts that he designed the scoring matrix for this interview in order to objectively and quantitatively assess the qualifications of each candidate for the Water Program Coordinator position, based upon the candidate's résumé and application and the job requirements. (*See id.* Ex. 1, 59-60; Ex. 7.) It is undisputed that Plaintiff was the lowest-scoring candidate in the scoring matrix, making her, in Adams' assessment, the least-qualified person for the job. Hence, the City has shown that Adams made the hiring decision based upon the scoring matrix and hired the highest-scoring candidate. (*See id.* 73:15-18.) This is a legitimate reason for the City's refusal to hire Plaintiff. Hence, the burden shifts back to Plaintiff to show that this legitimate reason was mere pretext for discrimination.

A plaintiff may show pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010) (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). In refusal-to-hire cases, a showing that the unsuccessful employee was "'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected" will be sufficient to prove that the employer's proffered reasons are pretextual. *Moss v. BMC Software, Inc.*, — F.3d —, 2010 WL 2633062, at *4 (5th Cir. July 2, 2010) (quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)). "[T]he bar is set high for this kind of evidence" *Id.* (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)). Unless the qualifications are so widely disparate that no

reasonable employer would have made the same decision, any differences in qualifications are not probative evidence of discrimination. *Id.* However, "[a]n employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision [can] raise a genuine issue of material fact as to pretext." *Id.* at *7.

Here, Plaintiff argues that Adams' use of the scoring matrix was mere pretext for discrimination because it was designed to prejudice Plaintiff. First, Plaintiff argues, this scoring matrix was not an accurate identifier of the candidates' qualifications because the scoring matrix emphasized skill sets and qualifications that were different from those listed in the job applications materials. Plaintiff does present some evidence of this. For instance, while the scoring matrix placed a heavy emphasis on accounting and finance skills (*see id.* Ex. 7, 117), the Water Programming position called for heavy interaction with customers (*id.* Ex. 10, 14), and Plaintiff presents evidence that Adams eventually recommended changing the title to more accurately reflect the job's true function—customer service (*id.* Ex. 18.). The scoring matrix placed an emphasis on the candidates' obtaining degrees in some business-related field, such as accounting or finance (*id.* Ex. 7, 117), something not mentioned in the posted job description (*id.* Ex. 9, 10). The scoring matrix's emphasis on business-related degrees was even over fields specifically mentioned in the job application description, such as degrees in biology (Pl.'s App. Ex. 9, 10), a degree which Plaintiff had obtained (*id.* Ex. 4, 237).

Next, Plaintiff argues that the scoring matrix seemed to be designed to specifically favor the other candidates over Plaintiff. Again, there is some evidence supporting this argument. For instance, while Plaintiff did receive credit for her undergraduate degree in biology (*see id.* Ex. 13, 234), because the other two candidates had undergraduate and post-graduate degrees in a

9

business-related field, they received two to four times more credit for their educational background, giving them an advantage over Plaintiff in the scoring matrix's scoring system.[1] In the section dealing with the candidates' experience, the scoring matrix credited a candidate's experience in accounting management, giving the highest credit to candidates having six years or more of such experience. (Pl.'s App. Ex. 7, 117.) While the other candidates, because of the experiences described in their résumés and applications, received most of the credit available under this section (*id.* Ex. 13, 1226, 1230), Plaintiff, who did not list or describe having accounting experience in her application or résumé, was awarded zero points in this section (*id.* Ex. 13, 1234). While the job description does give some indication that experience in budget management and knowledge of statistical analysis and finance were valued, nothing in the description indicates that six or more years of accounting management experience would be preferred. (*Id.* Ex. 9, 10.)

Despite Plaintiff's evidence that the scoring matrix seemed to favor the other candidates in areas not listed as qualifications in the job's posted description, this evidence might fall harmlessly unless Plaintiff can demonstrate that Adams designed this scoring matrix in a way to prejudice Plaintiff. Again, Plaintiff presents such evidence. First, Adams had the opportunity to develop the scoring matrix to favor the other candidates' applications because he developed this scoring matrix after reviewing the final candidates' applications. (Pl.'s App. Ex. 1 49:10-

---

[1] Candidate Tammy Vander Kuy had a masters in management and an undergraduate degree in business administration (Pl.'s App. Ex. 11, 211, 216) and received credit for not only having those degrees but also for those degrees' being in a business-related field (*id.* Ex. 13, 1226). The other candidate, Linda Cueller, received credit both for having an undergraduate degree and having a degree in a business-related field. (Pl.'s App. Ex. 13, 1230.)

50:50:20; 51:13-25.)² Next, the evidence suggests that the matrix was not altered in any way by Hartung, who merely filled in the matrix as provided. (*Id.* Ex. 2, 46:3-13.) Further, there is some evidence that the matrix deviated from the job description qualifications in order to more closely align with the other candidates. For instance, the scoring matrix's emphasis in a candidate having six years or more experience with account management appears to align perfectly with one candidate's application, where the candidate listed having exactly six years' experience managing fifty accounts with the Texas Tech Health Science Center as an accounting analyst. (*See id.* 208, 215.)

The City argues that, even accounting for the listed discrepancies, Plaintiff would still have scored lower than the other candidates. Moreover, the City argues that Plaintiff's evidence is simply insufficient to show that Plaintiff can meet the clearly better-qualified standard. The Court is of the opinion that these arguments merely highlight the underlying factual controversy at issue in this suit. The fact issues surrounding the job's qualifications make it difficult to assess with any degree of legal certainty Plaintiff's qualifications compared to the other candidates' qualifications. Even the scores provided by the scoring matrix provide little

---

²Defendant may have a same-actor inference with respect to this evidence, *see Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), because Adams was part of the same group in which a general consensus was reached as to the top three candidates, including Plaintiff. (Pl.'s App. Ex. 1, 50:6-25, 59:15-23.)

assistance. Plaintiff's evidence suggests that in some cases the scores were based upon incomplete information[3] or improperly influenced by Hartung.[4]

Even assuming that Plaintiff's evidence is insufficient to meet the clearly better-qualified standard and demonstrate pretext, there appears to be evidence that Plaintiff's protected activity might have been a motivating factor in the decision not to hire Plaintiff. *See Smith v. Xerox*, 602 F.3d 320, 329, 333-34 (5th Cir. 2010) (holding mixed-motive framework applies in Title VII cases). The City's Motion for Summary Judgment must be DENIED.

## IV.
## CONCLUSION

For the reasons mentioned herein, the City's Motion for Summary Judgment is DENIED.

SO ORDERED.

Dated July 21, 2010.

_____
SAM R. CUMMINGS
UNITED STATES DISTRICT COURT

---

[3]Plaintiff was not always asked questions during her interview that allowed her to address each scoring matrix's categories, leaving Hartung with only Plaintiff's résumé and application to consult, which were prepared based on the job description, not the scoring matrix. (Pl.'s App. Ex. 2, 86.)

[4]There is some evidence that Hartung knew of the ongoing dispute between Terry and Adams and discussed such with Adams (*see id.* Ex. 17), which might have caused him to treat Plaintiff as a disfavored candidate (*see, e.g.*, *id.* Ex. 2, 98.)