IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| MARTHA ELLERBROOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF LUBBOCK, TEXAS, | ) | |
| | ) | Civil Action No. 5:09-CV-144-C |
| Defendant. | ) | ECF |

**ORDER**

On this date the Court considered:

(1)     Defendant City of Lubbock's Post-Verdict Motion (and Memorandum) for

Judgment as a Matter of Law, or a New Trial, filed October 28, 2010;

(2)     Plaintiff Martha Ellerbrook's Response, filed November 3, 2010;

(3)     Plaintiff Ellerbrook's Motion to Enter Final Judgment Against the City of

Lubbock, filed October 27, 2010;

(4)     Defendant Lubbock's Response and Memorandum, filed November 4, 2010;

(5)     Plaintiff Ellerbrook's Motion for Attorney's Fees and Brief, filed October 27,

2010;

(6)     Amended Declaration of Adam Voyles in Support of Ellerbrook's Application for

Attorney's Fees, filed October 28, 2010; and

(7)     Defendant Lubbock's Response and Memorandum, filed November 4, 2010.

After considering all relevant arguments and authorities, the Court is of the opinion that

the City's Rule 50(b) Renewed Motion for Judgment as a Matter of Law should be GRANTED,

the City's Rule 59 Motion for New Trial should be CONDITIONALLY GRANTED, Ellerbrook's Motion to Enter Final Judgment should be DENIED, and Ellerbrook's Motion for Attorney's Fees should be DENIED as moot.

## I.  FACTUAL & PROCEDURAL BACKGROUND

Martha Ellerbrook ("Ellerbrook" or "Plaintiff") brought a claim against the City of Lubbock ("Lubbock" or "the City") for retaliatory failure to hire under Title VII of the Civil Rights Act of 1964, as amended ("Title VII").  42 U.S.C. §§ 2000e *et seq.*  The case was tried before a jury, the trial of which began on October 12, 2010, and ended on October 14, 2010, when the jury returned a verdict for the Plaintiff.  Post-trial motions followed, which the Court now takes up for consideration.  The following are the pertinent facts presented at trial.

Martha Ellerbrook, the plaintiff, is married to Terry Ellerbrook ("Terry"), a long-time employee of the City.  Between 2005 and 2006, Terry filed multiple EEOC charges and lawsuits against the City ("Terry's litigation") based on adverse employment actions he allegedly suffered, which stemmed from a recommendation by Tom Adams ("Adams"), the then Lubbock Deputy City Manager, that Terry be terminated.  The facts surrounding Terry's litigation against the City are relevant only to the extent that Ellerbrook assisted with the prosecution of her husband's litigation.  Ellerbrook testified that she accompanied Terry to meetings with attorneys regarding his claims, prepared open records requests, reviewed documents, and fielded phone calls from the EEOC.

In 2006, the City decided to hire a new employee for the position of Water Programs Coordinator ("WPC").  Although the parties did not agree at trial whether this was a new position or an existing one, it was undisputed that no city employee currently held the position.

2

Adams, as the city employee with oversight of the city water utility, was instrumental in the creation of the job description and advertising of the WPC position.

In response to a job posting on the City's website, Ellerbrook applied with the City in November 2006 for the WPC position. She was among twenty-four applicants, twenty of which made it past HR's screening for minimum qualifications. Adams headed a committee of various city department heads in the selection of four candidates from the applicant pool for further consideration for the position.[1] Because Terry's litigation was still ongoing, and in an attempt to avoid the appearance of impropriety, Lee Ann Dumbauld ("Dumbauld"), the City Manager, decided to employ Chris Hartung ("Hartung"), a management consultant for public sector agencies (or a so-called "head-hunter") from Dallas, to conduct the interviews of the final candidates for the job. Hartung testified to having extensive experience in both city government and the hiring of city employees.

In their initial communication, Adams told Hartung that the City wanted to bring him into the hiring process because a relative of one of the candidates had filed a grievance against Adams. Notably, Plaintiff presented no legally cognizable evidence at trial that Hartung knew that Ellerbrook was the candidate with a relative who had filed a grievance against Adams and certainly no evidence that Hartung had any knowledge whatsoever that Ellerbrook had assisted Terry with his litigation.

Adams initially asked Hartung to simply interview each semi-finalist and to rank them as he saw fit. At Hartung's request, however, Adams developed a scoring matrix for Hartung to use

---

[1]One applicant withdrew his name; therefore, only three applicants were actually interviewed for the position.

during the interview process and upon which to base his rankings.  When Adams sent Hartung

the prepared scoring matrix, along with the attached job description and posting, he invited any

comments of Hartung regarding the nature of the matrix.  Hartung then received from the City

the application materials of the semi-finalists, at which point Hartung contacted all three

remaining candidates and requested additional materials from each one, including writing

samples listing the applicant's accomplishments.

In January 2007, Hartung interviewed all three semi-finalists for the WPC position in

Lubbock.  Each interview lasted one to one and a half hours.  In the interviews, Hartung testified

that he asked each candidate a number of questions based on her application and/or résumé; her

responses to his requests for references, writing samples, and other materials; questions prepared

by both the City and himself; the scoring matrix developed by Adams; as well as various

hypothetical situations he posed to the candidates.  Upon the conclusion of the interviews,

Hartung completed the scoring matrix for each candidate based on the impressions he gathered

from the interviews and his review of the applicants' other submitted materials, and then sent the

scored matrices to Adams.

It was undisputed at trial that, according to Hartung's completed matrices, Tammy

Vander Kuy ("Vander Kuy") had the highest score, Linda Cuellar had the second-highest score,

and Ellerbrook had the third-highest score.  Adams testified that he then offered the job to

Vander Kuy (who accepted) based on Hartung's assessment of the candidates, which was

manifest in his rankings.  Because Hartung ranked Vander Kuy the highest, Adams believed this

result indicated that she was the most qualified candidate for the position.

At trial, Ellerbrook argued that Adams manipulated the scoring matrix in such a manner that would inevitably lead Hartung to rank Vander Kuy as the highest candidate, thus precluding Ellerbrook from getting the job, in an effort to retaliate against her for her assistance in Terry's litigation.  The City denied any such retaliation and claimed that Vander Kuy was hired simply because she was the most qualified applicant for the job and Ellerbrook was not.

## II.  STANDARDS

### a.  Renewed Motion for Judgment as a Matter of Law

A Rule50(b) renewed motion for judgment as a matter of law is reviewed under the same standard as a Rule 50(a) motion for judgment as a matter of law.  *Foradori v. Harris*, 523 F.3d 477, 485 n.8 (5th Cir. 2008).  A court can grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a)(1); *Rutherford v. Harris County*, 197 F.3d 173, 179 (5th Cir. 1999).  A Rule 50(a) motion is a challenge to the legal sufficiency of the evidence, and as such, all reasonable inferences should be drawn and all credibility determinations should be resolved in the light most favorable to the nonmoving party.  *Foradori*, 523 F.3d at 485 (citing *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005)).

A court properly grants such a motion "if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict."  *Rutherford*, 197 F.3d at 179 (internal quotation marks omitted); *see also Boeing Co. v. Shipman*, 411 F.2d 365, 375 n.16 (5th Cir. 1969) (en banc) ("The Court should consider *all* of the evidence and not just that evidence which supports the non-mover's

case.") (emphasis in the original).  "A mere scintilla of evidence is insufficient to present a

question for the jury."  *Rutherford*, 197 F.3d at 179.  Even if the plaintiff does present more than

a scintilla of evidence, there may be a case in which "some evidence may exist to support a

position which is so overwhelmed by contrary proof as to yield to a [judgment as a matter of

law]."  *Neely v. Delta Brick & Tile Co.*, 817 F.2d 1224, 1226 (5th Cir. 1987).  "There must be a

conflict in substantial evidence to create a jury question."  *Rutherford*, 197 F.3d at 179 (quoting

*Boeing*, 411 F.2d at 374-75).

     *b.  Retaliation Claim Under Title VII*

     Ellerbrook could have presented her case by putting on either direct or circumstantial

evidence at trial.  Because she presented no direct evidence of retaliation, Ellerbrook had to rely

solely on circumstantial evidence to prove her claim for unlawful retaliation under Title VII.

     For Ellerbrook to establish a prima facie claim for unlawful retaliation, she had to

demonstrate at trial that (1) she engaged in activity protected by Title VII; (2) she suffered an

adverse employment action; and (3) a causal connection existed between the protected activity

and the adverse employment action.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th

Cir. 2000), cited in *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007).

Under the modified *McDonnell Douglas* framework, after a plaintiff demonstrates her prima

facie case for retaliation, the burden shifts to the defendant to articulate a legitimate, non-

discriminatory reason for its decision not to hire the plaintiff.  *See Rachid v. Jack In The Box,

Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).  If the defendant meets its burden of production by

showing a legitimate reason for its actions, the plaintiff must then offer sufficient evidence to

create a genuine dispute of material fact by showing that (1) the defendant's reasons are false or

unworthy of credence and, thus, merely a pretext for discrimination, or 2) the defendant's

reasons, while true, were also motivated by a protected characteristic.  *See id.* at 312.

Even if the plaintiff sets forth sufficient evidence to reject the defendant's explanation, an

employer is entitled to judgment as a matter of law if the record conclusively establishes a

nondiscriminatory reason for the employer's action or if the plaintiff raises only a weak issue of

fact as to the falsity of the employer's reason and the record contains abundant, uncontroverted

independent evidence that there was no retaliation.  *See Reeves v. Sanderson Plumbing Prod.,*

*Inc.*, 530 U.S. 133, 148 (2000).  In making its decision, the court may consider "the strength of

the plaintiff's prima facie case, the probative value of the proof that the employer's explanation

is false, and any other evidence that supports the employer's case and that properly may be

considered on a motion for judgment as a matter of law."  *Id.* at 148-49.

   c.  *Motion for New Trial*

When a party makes both a renewed motion for judgment as a matter of law and a motion

for new trial, and the court grants the renewed motion for judgment as a matter of law, the court

must also conditionally rule on the motion for new trial in case the judgment is thereafter vacated

or reversed.  Fed. R. Civ. P. 50(c).  Federal Rule of Civil Procedure 59 provides a district court

with discretion to grant a new a trial.  *See* Fed. R. Civ. P. 59.  A court may grant a new trial

"after a jury trial, for any reason for which a new trial has heretofore been granted in an action at

law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  A new trial may be appropriate if (1) the

verdict is against the great weight of the evidence; (2) the damages awarded are either excessive

or inadequate; or (3) the trial was unfair or marred by prejudicial error.  *Scott v. Monsanto Co.*,

868 F.2d 786, 789 (5th Cir. 1989).  "The authority to grant a new trial . . . is confided almost

entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980).

### III.  ANALYSIS

#### a.  *Lubbock's Motion Comports with Rule 50(b)*

As a preliminary matter, the Court must address the issue raised in Ellerbrook's Response that the City is precluded from arguing in its Rule 50(b) Motion that Plaintiff failed to (1) present evidence sufficient to establish a causal link between Plaintiff's protected activity and the adverse employment action suffered by Ellerbrook; and (2) present evidence sufficient to establish pretext.  Ellerbrook asserts that the City is barred from raising the above arguments in its post-verdict Rule 50(b) Motion because it failed to raise those arguments in its pre-verdict Rule 50(a) Motion.  The Court is of the opinion that the portions of the City's Rule 50(a) Motion that address the lack of "proof of awareness of the protected conduct by the decision maker (*viz*, Tom Adams)" and Ellerbrook's failure "to show the successful applicant had qualifications clearly inferior to her's," (Def.'s Mot. for Jmt. As a Mat. of Law, p. 2.), are fairly representative of the arguments raised in the City's Rule 50(b) Motion.  *See Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 751 (5th Cir. 1993).  Therefore, the arguments presented in the City's Rule 50(b) Motion are proper.

#### b.  *Ellerbrook's Prima Facie Case of Retaliation*

##### 1.   Plaintiff Engaged in Protected Activity

At trial, Plaintiff argued that she engaged in protected activity under Title VII when she assisted her husband in the prosecution of his EEOC claims, and later lawsuits, against the City. Ellerbrook testified that she accompanied her husband to meetings with his attorney regarding

his claims, prepared open records requests, reviewed documents, and fielded phone calls from

the EEOC.  Terry's EEOC claims and lawsuits clearly fall under the category of Title VII

protected activity.  *See Ramirez v. Gonzales*, 225 F. App'x 203, 209 (5th Cir. 2007) (citing

*Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005)).  Although the Court

expresses concerns over whether Ellerbrook's actions constitute the type of "assistance"

contemplated by Title VII, *see Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1227 (5th Cir. 1996), the

City does not genuinely dispute this issue in its Rule 50(b) briefing.  Therefore, Ellerbrook

satisfied the first element of her prima facie case.

      2.   Plaintiff Suffered an Adverse Employment Action

Next, Ellerbrook had to show at trial that she suffered an adverse employment action.

This element appears to be undisputed.  Plaintiff claimed she was denied a position for which she

asserts she was qualified.  Under Title VII, a refusal to hire is an adverse employment action.

*Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 555 (5th Cir. 1997).  Therefore, Ellerbrook

satisfied the second element of her prima facie case.

      3.   A Causal Connection Does Not Exist Between the Protected Activity and the
          Adverse Employment Action

Finally, to establish her prima facie case of retaliation, Ellerbrook had to present

evidence upon which a reasonable juror could believe that a causal connection existed between

her assistance in Terry's litigation and the City's failure to hire her for the WPC position.

Because Plaintiff failed to present sufficient evidence at trial of Adams' knowledge of her

assistance, her claim fails as a matter of law.  *See Chaney v. New Orleans Pub. Facility Mgmt.,*

*Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected

conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

The City argued that Ellerbrook presented insufficient evidence that Adams, as the ultimate decision maker, had any knowledge of Ellerbrook's assistance in Terry's litigation.  At trial, Adams emphatically denied having any knowledge of Ellerbrook's assistance, and Plaintiff presented no direct evidence of such.  Therefore, Ellerbrook argued that circumstantial evidence points to Adams' knowledge of her assistance.

First, Plaintiff pointed to the fact that Adams was noticed for a deposition in Terry's case on either December 11 or 12, 2006 (which would have been either the day before or the day of Adams' meeting with the City department heads at which they chose the four semi-finalists for the WPC position) as evidence of Adams' knowledge of Ellerbrook's assistance.  It was undisputed, however, that the deposition was postponed until January 4 and completed on February 12, 2007, *after* Adams created the matrix.  Therefore, even if Adams gained knowledge of Ellerbrook's assistance at his deposition in Terry's case (assuming that Ellerbrook was present at the deposition and assuming that her presence constitutes "assistance"), Adams would not have gained such knowledge until after the alleged discriminatory act took place (i.e., Adams' development of the matrix in such a manner as to allegedly preclude Ellerbrook from being hired).  At best, this fact points only to Adams' knowledge of Terry's litigation against the City, not of Plaintiff's assistance.

Furthermore, Ellerbrook argued that Dumbauld must have told Adams of Plaintiff's assistance.  Again, Ellerbrook failed to offer any direct evidence on point, and the circumstantial evidence is less than substantial.  Dumbauld testified that she was aware, "to some extent," that

10

Ellerbrook was involved in assisting Terry with his litigation against the City.  Plaintiff claims in her response that the jury could infer that Dumbauld had to have conveyed this information to Adams in light of the fact that the City hired an outside consultant to conduct the interviews. Yet Dumbauld never indicated that she discussed with, or even mentioned to, Adams Ellerbrook's involvement in Terry's cases.  In fact, Dumbauld later testified that Adams recommended hiring an outside consultant in light of the litigation between the City and Terry, without any reference to Plaintiff's involvement in the litigation.  Additionally, when Adams informed Hartung of the reason behind the City bringing him into the hiring process, Adams referenced the City's litigation with a spouse of one of the applicants but made no reference to the applicant's involvement in the litigation.

Any evidence Ellerbrook presented at trial pointing to Adams' knowledge of her assistance was speculative at best.  Plaintiff presented no direct evidence to contradict Adams' testimony that he was unaware of her assistance, and the generalized, self-serving circumstantial evidence to which Ellerbrook testified was of negligible probative value to prove intentional discrimination.  It is evident to the Court that, based on the manner in which testimony was elicited at trial and the nature of the summation by Plaintiff's counsel, the line between Terry's litigation with the City and Ellerbrook's assistance became fatally blurred.[2]  A judgment as a matter of law "is appropriate in the employment retaliation context when the circumstantial evidence is such that the jury could improperly draw inferences that are mere speculation." *Grizzle v. Travelers Health Network*, 14 F.3d 261, 268-69 (5th Cir. 1994) (reversing a jury

---

[2]Notably, although the Court finds no evidence of such action in the record, an employer's retaliation against an employee based on the employee's spouse's involvement in protected activity is not violative of Title VII.  *See Holt*, 89 F.3d at 1227.

verdict based on the insufficiency of the evidence to prove causation in an employment

retaliation claim); *see also Zervas v. Faulkner*, 861 F.2d 823, 832 n.9 (5th Cir. 1988)

("Circumstantial evidence alone may suffice to prove [plaintiff's claim] . . . .  Nevertheless . . . ,

the jury's freedom to draw inferences from circumstantial evidence does not permit either wholly

unreasonable inferences or those which amount to mere speculation and conjecture.").

Reasonable inferences can be drawn only so far, and speculation is no substitute for actual

evidence, not even circumstantial evidence.  Because no reasonable juror could have found that

Adams knew of Ellerbrook's assistance in Terry's litigation against the City, the Court is of the

opinion that Lubbock's Renewed Motion for Judgment as a Matter of Law should be

GRANTED.

> *c. The City's Legitimate, Nondiscriminatory Reason for Not Hiring Ellerbrook*

Although Ellerbrook failed to submit legally sufficient evidence at trial to raise a genuine

fact dispute as to the third element of her prima facie case, the Court, out of an abundance of

caution and in an effort to provide a full analysis of the issues, will proceed further with its

consideration of the case under the assumption that Ellerbrook provided enough evidence in

support of her prima facie case to shift the burden to the City.  Under this assumption, the City

then shoulders the burden of production to show a legitimate, nondiscriminatory reason for not

hiring Ellerbrook.  *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

An employer's decision not to hire a candidate because the employer determined that the

individual was not as qualified as the person selected is a legitimate, non-discriminatory reason

for such decision.  *See EEOC v. La. Office of Cmty. Serv.*, 47 F.3d 1438, 1443 (5th Cir. 1995).

At trial, the City asserted that Ellerbrook did not receive the job simply because she was not the

most qualified candidate.  It was undisputed that Vander Kuy, the recipient of the position, either matched or outscored Ellerbrook in every category of the interview matrix scored by Hartung. The City's assertion that it did not hire Ellerbrook because Vander Kuy was a better qualified candidate is a legitimate, non-discriminatory reason, thus satisfying the City's burden of production.

### d.  No Evidence of Pretext

Because the City articulated a legitimate, non-discriminatory reason for not hiring Ellerbrook, she then had the burden to show that the City's reason was a pretext for intentional discrimination.  *Amie v. El Paso Indep. Sch. Dist.*, 253 F. App'x 447, 453 (5th Cir. 2007). Ellerbrook could have accomplished this either directly, by showing that a discriminatory reason more than likely motivated the City, or indirectly, by showing that the City's asserted reason was unworthy of credence.  *Id.*  At trial, Ellerbrook attempted to establish pretext by arguing that she was more qualified for the WPC position than Vander Kuy.

For Ellerbrook to establish pretext in this way, she had to raise a fact issue as to whether she was "clearly better qualified" and not merely better or as qualified.[3]  *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 395 (5th Cir. 2008) (not "clearly better qualified" when plaintiff earned identical score as employee who received promotion; even if plaintiff had scored better, no evidence of pretext because one criterion among many is not determinative of pretext).  To show that she was clearly better qualified, Ellerbrook had to present evidence from which the jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have

---

[3]While the "slap you in the face" inquiry is no longer appropriate, the "clearly better qualified" rule is still good law.  *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456-57 (2006); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 927 (5th Cir. 2010).

chosen the candidate selected over the plaintiff for the job in question." *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999). "[U]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision . . . ," *id.*, any "differences in qualifications are generally not probative of evidence of discrimination." *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001). Thus, "the bar is set high for this kind of evidence." *Id.*

Evidence that Ellerbrook was "clearly better qualified. . . must be more than merely subjective and speculative." *Amie*, 253 F. App'x at 453 (internal citations omitted); *see Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (providing that "greater experience alone will not suffice to raise a fact question as to whether one person is clearly more qualified than another"). In other words, "differences in qualifications between job candidates are generally not probative evidence of discrimination unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Eberle v. Gonzales*, 240 F. App'x 622, 630 (5th Cir. 2007) (quoting *Deines*, 164 F.3d at 279).

The matrix, designed by Adams and utilized by Hartung, rates applicants in six areas: (1) education; (2) experience; (3) computer skills; (4) leadership skills; (5) interpersonal skills; and (6) technical skills. Each category breaks down into a number of sub-categories, each with corresponding point values. The idea was that Hartung was to interview each candidate and, based on the personal interview and related applicant materials, he would complete the matrix by assigning point values, within the range established by the matrix, for each of the three semi-finalists. While Ellerbrook did not take issue with the propriety of the six broad categories, she

did allege that some of the sub-categories and their corresponding point values were designed in a way to effectively precluded her from scoring high enough to get the WPC position.

    1.  Education

The category Ellerbrook pointed to as determinative, both at trial and in her response, is "education."  Under the "qualifications" segment of the City's job posting, the WPC position calls for "[a]ny combination of education and experience equivalent to completion of a bachelor [sic] degree in Public Administration, Environmental Engineering, Chemistry, Biology, or a related field . . . ."  As for the WPC job description, the "education" segment calls for "completion of a bachelor [sic] degree in public administration, business administration, environmental engineering, chemistry, biology, or a related field."

The matrix assigns the candidate the following point values in accordance with her level of education:

    a.  Bachelor [sic] Degree:  20

    b.  Bachelor [sic] Degree in Finance, Accounting or related field:  30

    c.  Masters [sic] Degree: 20

    d.  Masters [sic] Degree in Finance, Business, Management, or related field: 30

The City offered testimony at trial, both from City employees and Hartung, that an advanced degree in a relevant field is often favored in the hiring context, although not necessarily a minimum requirement.

At the time of the interviews in January 2007, Cuellar reported having a bachelor's degree in accounting and was accordingly awarded 50 points.  Ellerbrook reported having a bachelor's degree in biology and was accordingly awarded 20 points.  Vander Kuy reported

15

having a bachelor's degree in business administration and a master's degree in management and was accordingly awarded 100 points.

Ellerbrook made much ado at trial of the fact that Vander Kuy actually has a bachelor of science in occupational education degree[4] instead of a bachelor's degree in business administration.  Yet, this fact is wholly irrelevant because Plaintiff never alleged that either Adams or Hartung had any knowledge of this fact.  Furthermore, Plaintiff did not argue that Vander Kuy's degree does not meet the "any combination of education or experience" or "related field" qualifier in either the job description or job posting.  Finally, and perhaps most importantly, Plaintiff failed to argue that Vander Kuy's degree is anything other than what Vander Kuy claimed at trial:  the equivalent of a bachelor's of business administration degree.

The crux of Ellerbrook's argument lies in the fact that, despite its mentioning in the qualification and education sections of the WPC job posting and description, respectively, Ellerbrook received only the minimum number of education points for her bachelor's degree in biology, while the other applicants received additional points for having a business-related degree (Cuellar and Vander Kuy) and advanced degree (Vanker Kuy).  Plaintiff cites to *Moss v. BMC Software* for the proposition that "[a]n employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision would raise a genuine issue of material fact as to pretext."  610 F.3d 917, 926 (5th Cir. 2010).  In the case at bar, however, the job requirement Ellerbrook complains of was not previously unmentioned, nor did the City rely on it.

---

[4]Vander Kuy testified that a bachelor of science in occupational education degree is the equivalent of a bachelor of arts degree.  The only distinction is that the former allows students to gain credit for relevant work experience.

Ellerbrook argues that the additional weight given to degrees in business-related fields and advanced degrees constitutes an "unmentioned job requirement" because the fact that these degrees would be given additional weight did not appear as preferences on either the job description or posting.  Yet, Plaintiff misunderstands the meaning of "requirement."  The City never disputed at trial that a bachelor's degree in biology, which Plaintiff possesses, was an accepted base-line criterion for the job.  Had Ellerbrook not had a bachelor's degree in one of the mentioned fields, or a bachelor's degree at all, she would not have even made it past the initial HR screening (as was the fate of four of the original applicants).

Furthermore, the education criterion was not determinative, as Ellerbrook contended.  At trial, Plaintiff pointed out that, even combining Ellerbrook's education score with a full credit score in every other category of the matrix, she still would not have had the highest score of the candidates.  Ellerbrook argued that this result was evidence of Adams' intentional manipulation of the matrix he prepared for Hartung to use and complete in conjunction with the interviews.

The City's argument at trial, however, is the relevant inquiry.  The City noted that, even removing the education criterion from the equation, or equalizing it across the board, and adding together all the remaining categories of the matrix as Hartung scored them, Ellerbrook still would have scored the lowest of all the interviewees.  Even were the Court to assume that the education category of Adams' matrix incorporated unannounced job requirements and equalize

17

all three applicants' scores in the education category,[5] Ellerbrook still would have the lowest

score.[6]

2.  Experience

Ellerbrook argued, although not as fervently as the education category, that the

experience category was also manipulated by Adams to intentionally disadvantage her in the

interview process.  In the WPC job description and posting, the City mentioned that an applicant

must have experience in supervisory and financial management; contract administration and

budget administration; environmental laws pertaining to water and wastewater; and statistical

analysis and finance.  Again, these were base-line qualifications an applicant must have in order

to qualify initially for the position.  The matrix scored each applicant's experience as follows:

      a.      Budget Preparation Experience
              0 years:   0
              1-3 years: 10
              2-5 years: 25
              6+ years:  40

      b.      Account Management Experience
              0 years:   0
              1-3 years: 5
              2-5 years: 10
              6+ years:  15

      c.      Financial Planning and Analysis
              0 years:   0
              1-3 years: 5

---

[5]All three applicants reported having at least a bachelor's degree in a field mentioned in
the job description and posting.

[6]Equalizing the weight given to each applicant in the education category, each applicant
would have scored, overall, as follows: (1) Vanker Kuy, 72.3%; (2) Cuellar, 65.8%; and (3)
Ellerbrook, 63.6%.

2-5 years: 10
6+ years:  15

d.   Water/Wastewater Experience
0 years:   0
1-3 years: 5
2-5 years: 10
6+ years:  15

e.   Supervisory/Management
0 years:   0
1-3 years: 5
2-5 years: 10
6+ years:  15

One of Ellerbrook's primary contentions at trial was that the matrix did not give any

credit for knowledge of environmental laws pertaining to water and wastewater, even though she

testified to having extensive experience in this area.  Yet, "[a]n employer is free to determine

which type of experience is more relevant to an open position."  *Cook v. Miss. Dep't of Human

Servs.*, 108 F. App'x 852, 860 (5th Cir. 2004) ("[E]vidence of substantially more of a certain

type of experience is not probative of superior qualifications.").  Merely because the City posted

knowledge of environmental laws as a requirement for the WPC position does not mean that

Adams was required to make that requirement a category in the matrix.  *See id.*  To make

knowledge of environmental laws part of the base-line in order to screen out those without any

experience in the area was in the City's prerogative as the employer.

Ellerbrook complained further that Adams' assignment of heavier weight to the areas of

budgets, accounting, and finance are not fairly represented in the WPC job description and

posting.  Various City employees, both former and current, testified at trial to the notion that the

WPC position was in transition from a technical position dealing heavily with the physical

routing of the City's water and wastewater, to one more focused on budgetary and financial

issues of the water department.  Accordingly, Adams weighted the matrix more heavily in these areas, as was his right so to do.  *See id.*  Therefore, any argument Ellerbrook advanced based on Adams' alleged improper assignment of weights to each category fails because the matrix was reasonably related to the job description and posting, and any deviation was within an acceptable latitude enjoyed by an employer.

Vander Kuy, whom the Court found to be a credible witness, testified to having extensive experience in budget preparation and financial account management.  Ellerbrook, on the other hand, while testifying to having some experience, had significantly fewer years and less relevant experience than Vander Kuy.  Accordingly, Hartung gave Vander Kuy 85 points under experience, while Ellerbrook received only 70.  While greater experience is not necessarily indicative of better qualifications for a particular position, the fact that Vander Kuy outscored Ellerbrook in this category more than legitimizes the City's decision to hire Vander Kuy over Ellerbrook.

### 3.  The Remaining Categories

Unlike education and experience, Ellerbrook did not contend that Adams designed the remaining categories in a way as to create a systemic disadvantage against Plaintiff.  At most, she simply expressed disagreement as to the overall importance Adams assigned to certain sub-categories.  While Ellerbrook raised questions at trial with regard to the manner and reasoning Hartung employed both in conducting the interviews and scoring the matrices, she offered no evidence that he had any knowledge of her assistance with her husband's litigation.  At trial, Hartung testified that no one from the City attempted in any way to influence his selection among the candidates, and Plaintiff failed to offer any evidence to rebut this testimony or to

reasonably call it into question.  Even if the jury could conclude that Hartung was aware that Ellerbrook was the candidate whose spouse was involved in litigation against the City (evidence of which was scant), Plaintiff presented no evidence whatsoever that Hartung had any knowledge of Ellerbrook's assistance with the litigation.

While Title VII makes unlawful an employer's retaliation against an employment candidate for assisting in a Title VII proceeding, it does not prohibit an employer from retaliating against a potential hire *on the mere basis* that the candidate's spouse is involved in a Title VII proceeding.  *See Holt*, 89 F.3d at 1227 (holding that one whose spouse is engaged in protected conduct does not have automatic standing to sue for retaliation).  Therefore, even if Hartung had knowledge of Terry's litigation, his absolute lack of knowledge of Ellerbrook's assistance absolves his recommendation to the City of any retaliatory or otherwise impermissible taint.

It follows, then, that Ellerbrook's challenge to the manner in which Hartung conducted the interviews and scored the matrices is limited to an inquiry of the accuracy of his assessment of the candidates' qualifications as it relates to the "clearly better qualified" analysis.  Although Ellerbrook's counsel went round and round with Hartung at trial regarding the accuracy with which he conducted the interviews, Plaintiff presented no evidence that the interview was conducted in a manner violative of Title VII.  Neither the court nor the jury is tasked with second-guessing what essentially amounts to a poorly conducted interview.  *See Deines*, 164 F.3d at 281-82; *see also Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1507-08 (5th Cir. 1988) (in the ADEA context, but with regard to pretext analysis, "[The law] was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers.  [The law] cannot protect . . . employees from erroneous or

even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.")
(internal citations omitted).

At trial, Hartung articulated his reasons for scoring the matrices as he did.  While some of
the reasons he gave may have appeared less than thorough, Ellerbrook failed to present evidence
that Hartung was completely arbitrary or intentionally malignant in the way he calculated his
scoring.  In any event, even considering any missteps Hartung may have made in the course of
the interviews, Ellerbrook wholly failed to demonstrate that she was clearly better qualified than
Vander Kuy for the WPC position.

4.   Overall Pretext Analysis

It was undisputed at trial that Vander Kuy either outscored or tied Ellerbrook in every
category of the matrix.  As stated above, Adams, as the ultimate decision maker, had wide
latitude to weigh each category as he saw fit in order to hire the most qualified candidate for the
WPC position and best meet the needs of the City.  *See Cook*, 108 F. App'x at 860 ("[The Court
does] not second guess an employer's weighing of some qualifications over others unless such
weight is irrational or application of those standards is inconsistent.").  Even were the Court to
assume that the education category were improperly weighted, Ellerbrook still would have come
in last in the final tally.

Adams' design of the matrix was not beyond his purview as the employer, Hartung
scored the matrix without any knowledge of Ellerbrook's assistance, and Ellerbrook scored
lower than or equal to Vander Kuy in every category.  Therefore, no jury could have reasonably
concluded that Ellerbrook was clearly more qualified than Vander Kuy for the WPC position.

22

*e.  Motion for New Trial*

The City alternatively moved for a new trial under Rule 59, alleging the following

grounds:  (1) the verdict is against the great weight of the evidence; (2) the damages awarded are

either excessive or inadequate; and (3) the trial was unfair or marred by prejudicial error.  In

determining whether the verdict is against the great weight of the evidence, "the court weighs all

the evidence and need not view it in the light most favorable to the nonmoving party." *Beckham*

*v. La. Dock Co.*, 124 F. App'x 268, 270 (5th Cir. 2005).  Given the Court's analysis above and

its finding that Ellerbrook failed to put on sufficient evidence to even raise a genuine dispute of

fact as to her claim of retaliation, the Court is of the opinion that the verdict was against the great

weight of the evidence.

Even under the assumption that the evidence supported Ellerbrook's claim of liability,

the Court also agrees with the City that the verdict is against the great weight of the evidence in

that it does not reflect Ellerbrook's failure to properly mitigate her damages.  A plaintiff must

use "reasonable diligence to obtain substantially equivalent employment." *Migis v. Pearle*

*Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998).  "Substantially equivalent employment is that

employment which affords virtually identical promotional opportunities, compensation, job

responsibilities, working conditions, and status as the position from which the Title VII claimant

has been . . . terminated."  *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990).

"Although the employer is normally required to prove that substantially equivalent work was

available and that the former employee did not exercise reasonable diligence to obtain it, once

the 'employer proves that an employee did not exercise reasonable efforts to obtain work, the

employer does not also have to establish the availability of substantially equivalent

23

employment." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003) (quoting *Sellers*, 902 F.2d at 1193). "A plaintiff may not simply abandon his job search and continue to recover back pay." *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1468 (5th Cir. 1989).

A trial, the City put on evidence of a number of employment openings the City had between 2007 and 2010. Although Ellerbrook testified that she either did not qualify for some of the positions or she thought that the positions were not comparable to the WPC job, the law does not require that she be reinstated to a position of the exact same caliber as that to which she applied. Rather, Ellerbrook had a duty to mitigate her damages and seek out *substantially equivalent* employment. Instead, she passed on applying for a number of jobs that, while not the same dollar-for-dollar, were close enough in both pay and opportunity to the WPC position.

Furthermore, Ellerbrook testified that she did not apply for any positions with the county or in the private sector. She claimed that, although she looked for jobs in these areas, she was unable to find anything comparable. Yet, the Court found Plaintiff to be less than credible on this testimony and had serious doubts that she underwent a diligent search. *See Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) (the court may weigh all the evidence in reviewing a motion for new trial and is not required to view it in the light most favorable to the nonmoving party). Therefore, because Ellerbrook did not make a diligent search for comparable employment, the City was not required to establish the availability of substantially equivalent employment. *See Sellers*, 902 F.2d at 1193. Even assuming Ellerbrook proved liability, the Court is of the opinion that the verdict is against the great weight of the evidence with regard to damages because it does not reflect Ellerbrook's failure to mitigate her damages.

24

Based on the foregoing, the Court is of the opinion that the verdict is against the great weight of the evidence both with regard to liability and damages.  Therefore, in the event that the judgment is later vacated or reversed, the City's Motion for a New Trial should be **GRANTED**.

## IV.  CONCLUSION

While the above discussion is valuable in breaking down the Court's analysis of the evidence presented at trial and application of the relevant law, the ultimate question remains whether the evidence, taken as a whole, would allow a jury to infer that the City's actual reason for not hiring Ellerbrook was out of retaliation for her assistance with Terry's litigation.  *See Vadie v. Miss. St. Univ.*, 218 F.3d 365, 372 (5th Cir. 2000).  The Court is cognizant of the fact that the principal purpose of pretext analysis is not to crawl inside the mind of an employer and Monday-morning-quarterback the process of a hiring decision.  Rather, it is to sniff out whether retaliation lies at the heart of the employer's decision.  *Piper v. Veneman*, 183 F. App'x 407, 410 (5th Cir. 2006).

Based on the foregoing, the Court is of the opinion that Ellerbrook failed to present sufficient evidence to raise a genuine fact dispute as to whether Adams had any knowledge of her assistance with Terry's litigation.  And even were the Court to assume that she did, Ellerbrook failed to demonstrate that she was clearly better qualified than Vander Kuy for the WPC position.  Put simply, the City did not fail to hire Ellerbrook out of retaliation.  The City did not hire Ellerbrook because she was not the clearly most qualified applicant.

THEREFORE, for the reasons stated herein,

(1)      Defendant City of Lubbock's Post-Verdict Motion for Judgment as a Matter of Law is **GRANTED**;

(2)     Defendant City of Lubbock's Alternative Motion for a New Trial is

**CONDITIONALLY GRANTED**;

(3)     Plaintiff Ellerbrook's Motion to Enter Final Judgment Against the City of

Lubbock is **DENIED**;

(4)     Plaintiff Ellerbrook's Motion for Attorney's Fees is **DENIED** as moot; and

(5)     Judgment shall be entered in accordance with this order.

All relief not specifically granted herein is denied.

SO ORDERED this 10th day of December, 2010.


SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE